IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV214-MU

| | |
|---|---|
| LANGDON M. COOPER, as Chapter 7 Trustee for the estates of RFS ECUSTA, INC. And RFS US, INC., ) ) ) Plaintiff, ) ) vs. ) ) NATHU RAM PURI, UPENDRA K. PURI, AJAY ) BADHWAR, STEVEN H. SMITH, PURICO (IOM) ) LIMITED, PURICO US, INC., RF & SON, INC., ) DOORLOCK, LTD., ECUSTA FIBERS LTD., ) ECUSTA AUSTRALIA PTY. LTD., PURICO GMBH, ) ENVIRONMENTAL DESIGN CONSULTANCY, ) P.H. GLATFELTER COMPANY and MOLLANVICK, ) INC., ) ) Defendants. ) ) | ORDER |

**PROCEDURAL AND FACTUAL HISTORY**

This matter is before the court upon motion of Defendants Purico (IOM) Limited ("Purico IOM"), Doorlock, LTD. ("Doorlock"), Ecusta Australia Pty. Ltd. ("Ecusta Australia"), and Purico GmbH ("Purico Germany"),[1] collectively referred to as the "Moving Foreign Defendants," to dismiss the Plaintiff's Complaint for lack of personal jurisdiction. The Motion to Dismiss was filed on November 23, 2004 in the bankruptcy court. The Trustee filed an opposition to the motion on January 10, 2005. This court withdrew the reference of this action on May 6, 2005 and the case was subsequently stayed for a period of time. On April 13, 2007, Purico IOM filed

---

[1] Purico GmbH also sought dismissal for insufficient service of process, but subsequently agreed to waive this objection.

1

a motion for leave to file a reply memorandum in further support of their motion.[2] Over the vigorous objection of the Trustee, on July 16, 2007, the court allowed Purico IOM to file its reply brief. The Trustee submitted a sur-reply and Purico IOM was allowed to respond to what it characterized as "new factual allegations and legal theories" in the sur-reply. Confident that this matter has been exhaustively briefed and no stone has been left unturned, this court will proceed to decide this matter.

According to the Complaint, each of the Moving Foreign Defendants is a company organized and having its principal place of business outside of the United States. The allegations in the Complaint describe in great detail an extremely sophisticated scheme by Defendant Nathu Puri ("Puri") to acquire the Ecusta Division, strip its assets, and defraud its creditors. The Complaint alleges that the Moving Foreign Defendants were all owned and controlled by Puri and were Alter Egos of Puri. Complaint ¶¶ 1,4, 47-59. Puri allegedly used or created the Moving Foreign Defendants in connection with his scheme to fraudulently acquire the Ecusta Division. Complaint ¶ 27. The Complaint alleges that each of the Moving Foreign Defendants was integrally involved, through Puri, with the acquisition. Id. The Complaint further details how Puri separated the assets of the Ecusta Division among the various entities he controls, including the Moving Foreign Defendants, to insulate such assets from U.S. creditors and to transfer the value from the Debtors to entities within Puri's control. Id.

## DISCUSSION

When personal jurisdiction is disputed, the burden is on the plaintiff to prove grounds for

---

[2] Purico IOM is the only Defendant who has pursued the original Motion to Dismiss.

personal jurisdiction by a preponderance of the evidence.  Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396  (4th Cir. 2003).  Where, as here, the court decides a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction.  Id.  In deciding whether the plaintiff has made such a showing, the court must resolve all disputed facts and reasonable inferences in favor of the plaintiff.  Id.

The Supreme Court has fashioned two tests for determining whether a defendant's contacts with the forum are sufficient to confer personal jurisdiction.  If the cause of action is unrelated to the defendant's activities in the forum, plaintiff must prove that the contacts are "continuous and systematic" to support the exercise of "general jurisdiction" over the defendant. Helicopteros Nationales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).  More limited "specific jurisdiction" applies if a defendant purposefully avails itself of the privilege of conducting activities within the forum and the plaintiff's claims arise out of those activities.  See Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985).  As Purico IOM is the only Defendant who has pursued the Motion to Dismiss, the court will address the issue of minimum contacts as to Purico IOM only.

In the adversary proceeding herein, the Trustee must show that Purico IOM has sufficient minimum contacts with the United States generally, not the forum state.  See In re Paques, 277 B.R. 615, 633 (Bankr. E.D.Pa. 2000); Bankruptcy Rule 7004(f). In In re Paques, the court held that a plaintiff need only demonstrate a foreign defendant's contacts with the United States in general, not one particular state, for a bankruptcy court to exercise jurisdiction in proceedings arising in or related to a case under the Bankruptcy Code.  Id. at 629-34.  The court explained

3

that Bankruptcy Rule 7004(f),[3] enacted in 1996, was intended to establish a federal long-arm statute, which made it unnecessary to look to a state's long-arm statute. Id. at 632. Thus, the inquiry is whether Purico IOM has minimum contacts with the United States such that subjecting it to personal jurisdiction does not offend the Due Process Clause of the Fifth Amendment.[4]

The court will first focus its analysis on the Trustee's allegations of specific jurisdiction. In order to determine whether specific jurisdiction exists, the court must examine (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum; (2) whether the plaintiffs' claims arise out of those activities directed at the forum; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

This entire lawsuit arises out of the acquisition of the Ecusta business from P.H. Glatfelter Company and Mollanvick, Inc., a subsidiary of Glatfelter. The acquisition was accomplished pursuant to an Amended and Restated Acquisition Agreement dated August 9, 2001 and certain related agreements. The Acquisition Agreement was between Glatfelter and Mollanvick, Inc., as "Sellers," and Purico IOM, R.F. & Son, Inc. and the Debtors, as "Buyers." Purico IOM negotiated the terms of the Acquisition Agreement on behalf of each of the buyers.

---

[3] Bankruptcy Rule 7004(f) provides:
Personal Jurisdiction. If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

[4] When a federal long-arm provision is applied, its constitutional limits are defined by the due process clause of the Fifth Amendment, not the Fourteenth. In re Paques, 277 B.R. at 628.

4

The negotiations, which took place, in part, in the United States, included the overall transaction structure (which is the subject of many of the claims) and the purchase of the North Carolina plant and U.S. receivables. Pursuant to the Acquisition Agreement, Purico IOM , as a "Buyer," made and received extensive representations, warranties and covenants and undertook to deliver and received the numerous closing deliveries called for in the Acquisition Agreement. These representations, warranties, covenants and closing deliveries made by Purico IOM as a "Buyer" to Glatfelter (a public U.S. company) related to all of the acquired assets, including the plant located in North Carolina. Specifically, Purico IOM, as a "Buyer," in Section 7.5 of the Acquisition Agreement, agreed to indemnify and hold harmless the "Sellers" from and against damages arising out of or resulting from the "Assumed Liabilities" (which were mainly liabilities relating to the North Carolina plant) or the breach of any representation, warranty or covenant contained in the agreement or in an ancillary agreement. Pursuant thereto, Glatfelter asserted numerous indemnity claims against Purico IOM through indemnity notices and cross-claims and third-party claims in this action. These claims were assigned to the Trustee by Glatfelter pursuant to an agreement approved by this court, without objection of Purico IOM, by Order dated September 8, 2006. Therefore, the Trustee currently possesses the indemnity claims against Purico IOM arising under the Acquisition Agreement.

In addition, in the Acquisition Agreement, Purico IOM, as a "Buyer," expressly consented to jurisdiction in the United States for claims "related to such agreement" and agreed to the application of Pennsylvania law. Moreover, all notices to the "Buyers" under the Acquisition Agreement were required to be delivered to Purico IOM. As noted above, the claims in this action all directly relate to the activities which Purico IOM directed to the United States, i.e., its

5

acquisition of the Ecusta business.

In light of the foregoing, the court finds that Purico IOM purposefully availed itself of the privilege of conducting activities in the United States by negotiating, structuring, and entering into the Acquisition Agreement at issue in this lawsuit. Moreover, the Trustee's claims arise out of those very activities. The court's inquiry must therefore turn to the issue of whether the exercise of personal jurisdiction would be constitutionally reasonable. In making this determination, the court may evaluate the burden on the defendant, the interests of the forum, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Christion Science Bd. Of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 217 (4th Cir. 2001). Where a defendant who has purposefully directed his activities at forum residents seeks to defeat jurisdiction, he bears the burden of demonstrating that other considerations render the assertion of jurisdiction unreasonable. Burger King, 471 U.S. at 477.

Purico IOM will not experience any significant burden in litigating this case here. Purico IOM has counsel in North Carolina that is familiar with the claims asserted against it and the other Defendants based upon its involvement in these cases for the past few years and will be defending Nathu Puri and all of the remaining Defendants, including a number of Purico IOM's subsidiaries, in this court. Moreover, Purico IOM has participated in other litigation related to the Debtors in the Western District of North Carolina.

This court and the state of North Carolina have a strong interest in deciding this case. The Debtors' business was headquartered in North Carolina prior to its acquisition and had employed

hundreds of North Carolina residents for many years. Moreover, this district has a substantial interest in this action because it relates to the Debtors' bankruptcy cases pending here. "The federal bankruptcy system is designed to provide one forum for adjudicating almost all disputes arising in or out of a particular case." In re Federalpha Steel LLC, 341 B.R. 872, 889 (Bankr. N.D. Ill. 2006). This court is the only forum in which the Debtor's assets may be efficiently recovered for the benefit of all creditors. Moreover, the claims in the Complaint represent the bulk of the assets available for creditors.

In sum, there is nothing unjust or unfair about this court's assertion of jurisdiction over Purico IOM. Accordingly, the court finds that the exercise of personal jurisdiction over Purico IOM is constitutionally reasonable. Since the court determines that Purico IOM is subject to this court's specific jurisdiction, the court finds it unnecessary to undertake an analysis of whether general jurisdiction applies.

IT IS THEREFORE ORDERED that the Motion to Dismiss for Lack of Personal Jurisdiction filed by the Moving Foreign Defendants is hereby DENIED.

Signed: September 17, 2007

Graham C. Mullen
United States District Judge